UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

GOLDEN PARK ESTATES, LLC,                                        No. 14-12253 t11

     Debtor.

**MEMORANDUM OPINION**

     This matter came before the Court on creditor Laurie Knott's Motion to Dismiss Debtor's

Bankruptcy Case or, in the Alternative, to Convert Debtor's Chapter 11 Case to Chapter 7, and

on the United States Trustee's Motion to Convert this Chapter 11 Case Pursuant to 11 U.S.C. §

1112(b) or appoint Chapter 11 Trustee Pursuant to 11 U.S.C. § 1104.  The Court held a final

hearing on the motions on May 28, 2015.  For the reasons set forth below, the Court will appoint

a Chapter 11 trustee.

## I.     FINDINGS OF FACT[1]

     On July 25, 2014, Golden Park Estates, LLC ("Golden Park") filed a voluntary petition

under chapter 11.  The Debtor owns a 60-unit apartment complex in Hobbs, New Mexico (the

"apartment complex" or the "Property").  The Property is the Debtor's sole asset.

---

[1] To the extent any finding of fact is construed as a conclusion of law, it is adopted as such, and vice versa. The Court may make additional findings of fact and conclusions of law as it deems appropriate or as may be requested by any of the parties.  In making these findings, the Court took judicial notice of the docket. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may, sua sponte, take judicial notice of its docket); *In re Mailman Steam Carpet Cleaning Corp.*, 196 F.3d 1, 8 (1st Cir. 1999) ("[t]he bankruptcy court appropriately took judicial notice of its own docket"); *In re Quade*, 496 B.R. 520, 524 (Bankr. N.D. Ill. 2013) (a "bankruptcy court [is authorized] ... to take judicial notice of its own docket").

Rita Pilate is the managing member and 80% owner of the Debtor. Kenneth Williams, Ms. Pilate's husband, has a 15% ownership interest, while Ritken, Inc. ("Ritken") owns the remaining 5% interest. Pilate and Williams are Ritkin's sole shareholders.

The Property is operated by a separate management company, Regal Manor Apartments, LLC ("Regal Manor"), pursuant to a contract between the Debtor and Regal Manor. Both Pilate and Williams have an ownership interest in Regal Manor. Regal Manor has managed the Property since 2009. Under the contract, Regal Manor does everything, including collecting all rent, paying all bills, making all repairs, and signing all leases in its own name. If there is money left over after all bills are paid (including a 10% management fee), it is paid over to the Debtor. One result of this unusual arrangement is that the Debtor has no cash. Another result is that the Debtor has no operating information.

The apartment complex is encumbered by the following:

| Encumbrance | Amount | Owner |
|---|---|---|
| | | |
| First Mortgage | $380,000 | Laurie Knott |
| Second Mortgage | $150,000 | Regal Manor |
| Real Estate Contract | $1,570,000 (net) | Court Properties |
| Total | $2,100,000 | |

Debtor purchased the Property from Laurie Knott, Tony Knott, and Kevin White under the Escrow Agreement and Contract for Deed dated May 4, 2009 (the "REC"). The REC "wraps" the first and second mortgages. Sellers' interests in the REC were assigned to Court Properties, LLC in March, 2010. Laurie Knott and Kevin White are the sole members of Court Properties.

The Debtor estimates that the apartment complex is worth $6,000,000. There is no other evidence of the actual value of the complex. There is evidence that the real estate market in Hobbs is tight, and that occupancy rates for area apartment complexes are very high. Knott has

-2-

never challenged the Debtor's assertion of value. The Court finds that there is substantial equity, in an unknown amount.

The Debtor owes $500,000 to insiders (Ritken, Pilate, and Williams) and about $14,000 to other general unsecured creditors.

Debtor's financial reporting has been consistently and materially deficient. The Debtor has not filed a Monthly Operating Report ("MOR") since March 10, 2015, reporting on January, 2015 activity. The Debtor therefore is at least three months behind on its MORs. Furthermore, the MORs Debtor has filed do not comply with applicable requirements, failing to disclose such basic information as sources of income, expense detail, post-petition accounts payable and receivable, unpaid taxes, unpaid administrative expenses, payroll, a balance sheet, a cash flow statement, or check copies. The attached bank statements are heavily redacted, making it impossible to determine what expenses are being paid and to whom, where the rental income is going, and the source of deposits.

Most of the MORs do not contain a rent roll. The three rent rolls that are provided do not adequately disclose lease terms, lease expirations, deposits, or rental income received.

Filed MORs show a decline in rental income from about $80,000 in August, 2014 to about $53,000 in January, 2015.

Debtor has never used its authorized debtor in possession account. The account shows a current balance of $88.82, with no reported income since the bankruptcy filing. All money generated by the apartment complex is run through Regal Manor's bank account.

Between December 1, 2014 and February 12, 2015, the Debtor operated without any authority to use cash collateral.

The lack of financial and other disclosure has been extremely problematic. No one can tell how the Debtor is doing. The general sense is that the Debtor is not performing well, and that the apartment complex is in need of substantial repair. The Court and the UST's office have prodded, cajoled, and threatened the Debtor, in an effort to obtain good bookkeeping and financial disclosure. Debtor has been intransigent.

The Court and the UST have been asking the Debtor from the beginning to retain a good bookkeeper or accountant. That has never happened. The debtor filed an application to retain an accountant on April 20, 2015. The Court later was informed that the accountant changed its mind and did not want to work for the Debtor.

There is evidence that the apartment complex has been poorly maintained for years, and is in need of substantial repairs, including repairs to the roof, parking lots, landscaping, stucco, fences, windows and screens, HVAC systems, and appliances. The total amount of deferred maintenance may be in the range of $400,000-$500,000.

The apartment complex suffered a substantial roof leak during the Chapter 11. It has been very difficult to obtain information about the extent of the leak, the damage done by the leak, or the cost to repair the leak. The leak caused Debtor's insurer to threaten to cancel the property insurance.

The Court ordered the Debtor to file, by May 13, 2015, an application to retain a real estate broker. The Debtor did not comply.

The Court also ordered the Debtor to file a plan and disclosure statement by May 13, 2015. The Debtor filed a plan (a day late) but not a disclosure statement.

-4-

Debtor's bankruptcy counsel withdrew on May 18, 2012. To date, the Debtor has not retained new counsel. Debtor's former counsel is owed about $14,000, according to his final fee application.

Debtor has no counsel, no accountant, no plan in prospect, and no ability or inclination to follow the disclosure rules of the bankruptcy court. To all appearances, the Debtor cannot maintain the apartment complex. The Debtor also appears to be losing money or at best breaking even.

Knott and Court Properties have no confidence in Debtor's management.

If the case is dismissed, the likely outcome would be the prompt termination of the Debtor's rights under the REC, and the estate's loss of equity above the $2.1 Million owed under the REC.

## II. DISCUSSION

### A. 11 U.S.C. § 1112(b): Conversion or Dismissal

§ 1112(b) provides:

> [T]he court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee . . . is in the best interest of creditors and the estate.

§ 1112(b)(4) lists 16 grounds that constitute "cause" for conversion or dismissal. The list is not exhaustive. *Hall v. Vance*, 887 F.2d 1041, 1044 (10th Cir. 1989) (list of enumerated grounds is not exhaustive); *In re SB Props. Inc.*, 185 B.R. 198, 203 (E.D. Penn. 1995) (stating that the "legislative history of § 1112(b) confirms that what may constitute 'cause' is non-exhaustive").

The party requesting dismissal or conversion under § 1112(b) bears the burden of establishing cause by a preponderance of the evidence. *In re ARS Analytical, LLC*, 433 B.R.

-5-

848, 861 (Bankr. D.N.M. 2010). In analyzing whether cause has been established under § 1112(b)(4), the Court applies a materiality standard. *In re Melendez Concrete, Inc.*, 2009 WL 2997920, at \*5 (Bankr. D.N.M. 2009).

Once cause is established under § 1112(b), the Court must dismiss or convert the case, or appoint a Chapter 11 trustee, unless the court finds "unusual circumstances ... that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate." 11 U.S.C. § 1112(b)(2). *See also In re Melendez Concrete, Inc.*, 2009 WL 2997920, at \*7 (court found sufficient unusual circumstances to deny motion to convert or dismiss despite showing of cause, where value of debtor's assets exceeded secured debt by more than 300%); *In re Orbit Petroleum*, 395 B.R. 145, 148–49 (Bankr. D.N.M. 2008) ("A plan which proposes to pay all creditors in full on the effective date is an unusual circumstance sufficient to deny conversion or dismissal even in the face of demonstrated cause"). While the Code does not define "unusual circumstances," "[u]se of the phrase contemplates circumstances not common in most chapter 11 cases and under which the purposes of the Bankruptcy Code would be better served by the case remaining in chapter 11." *In re Melendez Concrete, Inc.*, 2009 WL 2997920, at \*7. "The bankruptcy court has broad discretion ..." in fashioning relief under § 1112(b). *Hall*, 887 F.2d at 1044.

The Court concludes that there is cause to dismiss or convert this case under § 1112(b).

1. <u>Continuing Loss and No Likelihood of Rehabilitation (§ 1112(b)(4)(A))</u>. From what the Court can tell from the MORs on file, the Debtor has lost money post-petition and has unpaid administrative expense claims. The Property is in need of substantial repairs. Without more money and attention devoted to general upkeep and repairs, the Property will fall further into disrepair. The material nature of the deferred maintenance and the lack of earnings

and cash constitute a continuing loss to or diminution of the estate.  The Debtor has not demonstrated any likelihood of rehabilitation.  Cause therefore exists under § 1112(b)(4)(A). *See also In re Westgate Properties, Ltd.,* 432 B.R. 720, 723 (Bankr. N.D. Ohio 2010) (cause exists because of post-petition losses and no showing of ability to reorganize or rehabilitate); *In re Landmark Atlantic Hess Farm, LLC,* 448 B.R. 707, 714 (Bankr. D. Md. 2011) (same).

2.    Gross    Mismanagement    (§    1112(b)(4)(B)).    The    alleged    gross mismanagement must occur post-petition.  *See In re Rent–Rite Super Kegs West Ltd.,* 484 B.R. 799, 809 (Bankr. D. Colo. 2012) (pre-petition gross mismanagement is not cause under § 1112(b)(4)(B) because the estate is a post-petition entity); *In re First Assured Warranty Corp.,* 383 B.R. 502, 544 (Bankr. D. Colo. 2008) (citing *In re Rey,* 2006 WL 2457435, at *5 (Bankr. N.D. Ill. 2006)).  "Failure to maintain an effective corporate management team has been held to constitute gross mismanagement." *In re Products Intern. Co.*, 395 B.R. 101, 111 (Bankr. D. Az. 2008).   Courts have found gross mismanagement where a debtor has failed to file monthly operating reports. *In re McTiernan*, 519 B.R. 860, 866 (Bankr. D. Wyo. 2014).  The Court finds that the Debtor has been grossly mismanaged in this bankruptcy case.  Debtor's bookkeeping and accounting have been thoroughly and consistently inadequate, despite warnings and requests from the Court and the UST's office.  The Debtor has refused to use the authorized DIP account. The apartment complex has not been properly maintained, and the Debtor's monthly rental income has declined substantially (from what the Court can tell, given the state of reporting).  It is unclear whether the Debtor has paid post-petition property taxes.  The Debtor has run off its professionals and has missed deadlines to file a plan, disclosure statement, and an application to retain a broker.  Nothing has gone right in this case.  It is in the Debtor's best interest to try something else, because the debtor in possession is not getting the job done.

3. <u>Unauthorized Use of Cash Collateral</u>. From December 1, 2014 until February 12, 2015, the Debtor lacked authorization to use cash collateral, but operated nonetheless. Because of Debtor's insufficient reporting, it is difficult to determine what cash collateral was used and what expenses were paid during this time. These facts constitute additional cause under § 1112(b).

4. <u>Failure to File Compliant Operating Reports</u>. Debtor has not reported on its operations after January 31, 2015. The MORs for prior periods are inadequate, as discussed above. Debtor's mishandling of the MORs constitutes additional cause to convert the case. *See, e.g., In re Whitten,* 473 B.R. 380, 383 (Bankr. D. Colo. 2012) (flagrant disregard for reporting requirements by itself can constitute cause and whether debtor eventually filed the reports is immaterial); *In re Babayoff,* 445 B.R. 64, 81 (Bankr. E.D.N.Y. 2011) (operating reports provide necessary information about the progress of reorganization; late filing make evaluation more difficult, and missing filings may render evaluation impossible). *See generally* § 1112(b)(4)(F).

5. <u>Failure to Timely File a Plan and Disclosure Statement</u>. The Debtor missed the Court's May 13 deadline to file a plan and disclosure statement. Failure to file a plan and disclosure statement within the time set by the Court constitutes cause to dismiss or convert a case. § 1112(b)(4)(J) *See generally In re Vincens*, 287 Fed. Appx. 686, 688 (10th Cir. 2008) (failure to propose a feasible plan based on objective fact, together with failure to move the case forward in any other way constitutes cause under § 1112(b)). Debtor has been in Chapter 11 for nearly 11 months. No progress toward reorganization has been made during that time. There is no reason to believe the Debtor could reorganize given more time.

B. <u>§ 1104(a)(1): Appointment of a Chapter 11 Trustee for Cause</u>.

The appointment of a trustee in a Chapter 11 case is governed by § 1104(a), which

-8-

provides, in relevant part:

> At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest ... and after notice and a hearing, the court shall order the appointment of a trustee—
>
> (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause ...; or
>
> (2) if such appointment is in the interest of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or in the amount of assets or liabilities of the debtor.

The movant bears the burden of demonstrating cause. *In re Celeritas Tech. LLC*, 446 B.R. 514, 518-19 (Bankr. D. Kan. 2011). Some courts have held that the movant must demonstrate the need for a trustee by clear and convincing evidence. *See, e.g., In re Bayou Group, LLC,* 564 F.3d 541, 546 (2d Cir. 2009); *In re G-I Holdings, Inc.,* 385 F.3d 313, 317-318 (3d Cir. 2004). The Tenth Circuit has not adopted such a standard, and likely would use a preponderance of the evidence standard. *Celeritas Technologies, LLC,* 446 B.R. at 518 (citing cases).

Prepetition activity may be considered in evaluating Debtor's wrongdoing and/or incompetence. *In re Oklahoma Refining Co.*, 838 F.2d 1133, 1136 (10th Cir. 1988).

The inability to maintain adequate records and make prompt and complete reports justifies the appointment of a trustee. *In re Oklahoma Refining Co.*, 838 F.2d 1133, 1136 (10th Cir. 1988) (citing *In re State Capital Corp.*, 51 B.R. 400, 403 (Bankr. M.D. Fla. 1985); *In re Humphreys Pest Control Franchises, Inc.*, 40 B.R. 174, 177 (Bankr. E.D. Pa. 1984); *In re Ford*, 36 B.R. 501, 504 (Bankr. W.D. Ky. 1983)). *See also In re Plaza de Retiro, Inc.*, 417 B.R. 632, 641 (Bankr. D.N.M. 2009) ("Another independent ground for appointing a trustee is either perceived dishonesty or withholding of information or a debtor's inability to provide accurate

Case 14-12253-t11    Doc 158    Filed 06/11/15    Entered 06/11/15 10:33:28 Page 9 of 13

records and reports.").

Other factors courts have used to determine whether a trustee should be appointed for cause include:

> (1)     Materiality of the misconduct;
> (2)     Evenhandedness or lack of same in dealings with insiders or affiliated entities vis a-vis other creditors or customers;
> (3)     The existence of pre-petition voidable preferences or fraudulent transfers;
> (4)     Unwillingness or inability of management to pursue estate causes of action;
> (5)     Conflicts of interest on the part of management interfering with its ability to fulfill fiduciary duties to the debtor; and
> (6)     Self-dealings by management or waste or squandering of corporate assets.

*In re Nartron Corp.*, 330 B.R. 573, 592 (Bankr. W.D. Mich. 2005) (collecting factors from circuit cases).

The "determination of cause ... is within the discretion of the court[,] and due consideration must be given to the various interests involved in the bankruptcy proceeding." *In re Bergeron*, 2013 WL 5874571, at \*6 (Bankr. E.D.N.C. 2013) (quoting *Dalkon Shield Claimants v. A.H. Robins Co.*, 828 F.2d 239, 242 (4th Cir. 1987)).

When an estate is solvent, a trustee has responsibility to safeguard surplus property that would be returned to the debtor. *Ebel v. King (In re Ebel)*, 338 B.R. 862, 877 (Bankr. D. Colo. 2005); *In re Kazis*, 257 B.R. 112, 113 (Bankr. D. Mass. 2001) (if the estate is solvent, the Debtor becomes a party in interest and the trustee must consider Debtor's equity).

"[O]nce a bankruptcy court determines that 'cause' exists for appointment of a trustee under section 1104(a)(1) or that appointment of a trustee would be in the best interest of creditors under section 1104(a)(2)," the appointment of a trustee is mandatory. *In re Sims*, 1997 WL 854793, \* 4 (10th Cir. BAP 1997) (citing *Oklahoma Refining Co.*, 838 F.2d at 1136).

The decision to appoint a trustee is fact intensive and should be made on a case by case basis. *In re Plaza de Retiro*, 417 B.R. at 640.

The Court finds that movants have carried their burden of proving (under either standard) that cause exists to appoint a trustee under § 1104(a)(1). Causes include all of the factors listed in the discussion of § 1112(b). In addition, the Court finds that the facts outlined above constitute incompetence, justifying the appointment of a trustee. *See, e.g., In re Mako*, 102 B.R. 809 (Bankr. E.D. Okla. 1988) (incompetency has its roots in mismanagement, requiring a showing of a lack of business acumen and ability). The decline in the rental income and the condition of the Property, during a time of high occupancy and demand, strongly suggests that the Debtor is not being competently managed.

C.      § 1104(a)(2): Appointment of a Chapter 11 Trustee; Best Interest of Creditors. In addition, "the Court need not find any of the enumerated wrongs in order to find cause for appointing a trustee. . . . It is sufficient that the appointment be in the interest of creditors." *Oklahoma Refining Co.,* 838 F.2d at 1136. Courts have found that a history of transactions with companies affiliated with the debtor is sufficient cause to appoint a trustee in the best interest of creditors. *Id.* (citing *In re State Capital Corp.*, 51 B.R. 400 (Bankr. M.D. Fla. 1985); *In re Humphreys Pest Control Franchises, Inc.*, 40 B.R. 174 (Bankr. E.D. Pa. 1984); *In re Concord Coal Corp.*, 11 B.R. 552 (Bankr. S.D.W. Va. 1981); *In re Main Line Motors, Inc.*, 9 B.R. 782 (Bankr. E. D. Pa. 1981); *In re L.S. Good & Co.*, 8 B.R. 315 (Bankr. N. D. W. Va. 1980)). "[T]he debtor's ability to fulfill its duty of care to protect assets, its duty of loyalty, and its duty of impartiality" is at the core of an § 1104(a)(2) analysis. *In re Celeritas Tech., LLC*, 446 B.R. at 520. Other factors courts consider when determining whether appointment of a trustee is in the best interest of creditors under § 1104(a)(2) include:

Case 14-12253-t11    Doc 158    Filed 06/11/15    Entered 06/11/15 10:33:28 Page 11 of 13

(1)     The trustworthiness of the debtor;

(2)     The debtor in possession's past and present performance and prospects for the debtor's rehabilitation;

(3)     The confidence –or lack thereof–of the business community and of creditors in present management; and

(4)     The benefits derived by the appointment of a trustee, balanced against the costs of appointment.

*In re Plaza de Retiro,* 417 B.R. at 640; *In re Colorado-Ute Elec. Ass'n, Inc.*, 120 B.R. 164, 176 (Bankr. D. Colo. 1990) (citing *In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 168 (Bankr. S.D.N.Y. 1990)).

The Court finds that the appointment of a trustee is in the best interests of creditors and equity security holders, pursuant to § 1104(a)(2).  A Chapter 11 trustee would benefit Knott because he would attempt to sell the apartment complex as soon as practicable, would do what he could to maintain the property and operate it professionally, would file accurate and detailed operating reports, and would otherwise provide Knott and her counsel with information, reporting, and/or access.  The appointment of a Chapter 11 trustee would benefit the holders of the "insider" debt (totaling $500,000) and other general unsecured debt, which otherwise would not get paid.  Finally, appointment of a Chapter 11 trustee would benefit equity, to the extent there is value in the apartment complex over and above the costs of sale and the payment of secured and unsecured claims.

D.     Dismissal, Conversion, or Appointment of a Chapter 11 Trustee?

Cause exists to dismiss the case, convert the case, or appoint a Chapter 11 trustee. Because of the $514,000 of unsecured debt (albeit $500,000 is insider debt) and the substantial potential equity in the Property, the Court concludes that it would be better for creditors and equity holders, overall, to appoint a Chapter 11 trustee.  The Chapter 11 trustee's first concern should be to protect Knott's and Court Properties' collateral and ensure they are fully paid as

-12-

soon as practicable, but the Trustee should also see if he or she can sell the Property for enough

money to pay the other creditors and return funds to the Debtor.

III.    <u>CONCLUSION</u>

Cause exists to dismiss or convert the case under § 1112(b), and also to appoint a Chapter

11 trustee pursuant to § 1104(a). All things considered, the Court elects to appoint a Chapter 11

trustee. A separate order will be entered.


_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: June 11, 2015

Copies to:

William J. Arland, III
201 Third Street NW, Suite 505
Albuquerque, NM 87102

Alice Nystel Page
P.O. Box 608
Albuquerque, NM 87103-0608

Golden Park Estates, LLC
P.O. Box 72
Skillman, NJ 08558

-13-