UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

GOLDEN PARK ESTATES, LLC,                     Case No. 14-12253-t11

    Debtor.

## **MEMORANDUM OPINION**

Before the Court is the Chapter 11 Trustee's motion to authorize monthly payment of 75% of his Trustee fees earned in the prior month. The main secured creditor in the case objected, arguing that the Trustee should not be paid until creditors have been paid in full. For the reasons set forth below, the Court will grant the motion.

I.      FACTS[1]

On July 25, 2014, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code. The Debtor's sole asset is a 60-unit apartment complex in Hobbs, New Mexico (the "Property").

Post-petition, Regal Manor Apartments, LLC ("Regal Manor") operated the Property pursuant to a management agreement with the Debtor. The Debtor's members also are the primary owners of Regal Manor. Under the management agreement Regal Manor collected rent, paid bills, made repairs, and signed leases in its own name. One result of this unusual arrangement is that the Debtor lacked the financial and operating information needed to complete

---

[1] The parties waived their right to an evidentiary hearing and consented to the Court ruling on the Motion and the objection. The facts are taken from the memorandum opinion entered June 11, 2015 and from the docket. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may, sua sponte, take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (citing Fed. R. Evid. 201 and concluding that "[t]he bankruptcy court appropriately took judicial notice of its own docket"); *In re Quade*, 496 B.R. 520, 524 (Bankr. N.D. Ill. 2013), affirmed, 498 B.R. 852 (N.D. Ill. 2013) (a "bankruptcy court [is authorized] ... to take judicial notice of its own docket").

the required monthly operating reports.

The Property has three encumbrances:

| Encumbrance | Approximate amount secured | Owner |
|---|---|---|
| First Mortgage | $ 380,000 | Laurie Knott |
| Second Mortgage | $ 150,000 | Regal Manor |
| Real Estate Contract | $ 1,570,000 (net) | Court Properties |
| Total | $ 2,100,000 | |

Debtor purchased the Property from Laurie Knott, Tony Knott, and Kevin White under the Escrow Agreement and Contract for Deed dated May 4, 2009 (the "REC"). The REC "wraps" the first and second mortgages. Sellers' interests in the REC were assigned to Court Properties, LLC in March, 2010. Laurie Knott and Kevin White are the sole members of Court Properties.

There appears to be equity in the Property, although the amount is unknown. In addition to the secured claims listed above, the Debtor owes $500,000 to insiders (Ritken, Inc. Rita Pilate, and Kenneth Williams) and about $14,000 to other general unsecured creditors.

After conducting a final hearing on the motion to dismiss, convert, or appoint a Chapter 11 trustee, the Court ordered the appointment of a Chapter 11 trustee. Mr. Craig Dill, an accountant who lives and works in Albuquerque, New Mexico, was appointed on June 15, 2015.

The Trustee faced a challenging task in organizing the Debtor's affairs. In its memorandum opinion entered June 11, 2015, the Court found that the Debtor's accounting and financial reporting was consistently and materially deficient. Despite repeated Court orders, the Debtor never retained an appropriate bookkeeper or accountant. The Debtor had not filed a monthly operating report since March 10, 2015, reporting on January 2015 activity. The Debtor failed to disclose basic information such as sources and amount of income, expenses, post-

petition accounts payable and receivable, unpaid taxes, unpaid administrative expenses, payroll, a balance sheet, a cash flow statement, or check copies. The Debtor's bank statements were heavily redacted, making it impossible to determine what expenses were being paid and to whom, where the rental income is going, and the source of deposits. Further, the available rent rolls did not adequately disclose lease terms, lease expirations, deposits, or rental income received.

The Court also found that the Property's condition had deteriorated during the Chapter 11 case. When the Trustee was appointed, the Property was in need of substantial repairs, including repairs to the parking lot, landscaping, stucco, fences, windows and screens, HVAC systems, and appliances. The roof also leaked post-petition. Based on the evidence, the Court estimated that the total amount of deferred maintenance is in the range of $400,000 - $500,000.

In July 2015, the Trustee retained a broker to sell the Property. The Trustee has made considerable efforts to prepare the Property for sale. The MORs for July and August 2015 show the Trustee spent about $18,500 on repairs during those months. The MORs also show he performed a good deal of accounting work to prepare the Debtor's books and records for inspection by potential buyers.

In addition, the Trustee is working to recover estate property from the Debtor's principals. On July 21, 2015, the Trustee commenced an adversary proceeding against Rita Pilate and Regal Manor to recover funds and records necessary to repair, manage, and sell the Property. The defendants have been fairly uncooperative thus far. The Court held a hearing on September 25, 2015 to address their failure to surrender the funds and records to the Trustee.

The Trustee represents that he will need to spend a significant amount of time and money, and possibly turn down other work, to effectively administer the bankruptcy estate. He

-3-
Case 14-12253-t11    Doc 280    Filed 10/02/15    Entered 10/02/15 15:26:33    Page 3 of 10

periodically drives about 320 miles from Albuquerque to Hobbs to negotiate with vendors, oversee repairs, and coordinate with management.

The Trustee seeks interim payments equal to 75% of the commissions earned on disbursements during the previous month, pursuant to the commission schedule in 11 U.S.C. § 326(a),[2] and reimbursement of 100% the expenses he incurs each month. In July 2015, the Trustee disbursed $67,996.94, the commission on which would be about $6,650. In August 2015, the Trustee disbursed $44,292.25, the commission on which would be about $5,100. The Trustee also incurs monthly travel and other expenses.

Given the equity cushion in the Property and the monthly cash flow, the estate appears to be administratively solvent. If the Court authorized interim compensation as requested, it is unlikely the Trustee would be required to disgorge funds.

## II.   DISCUSSION

A.   <u>Overview of Trustee Compensation</u>. Sections 326 and 330 govern compensation of Chapter 11 trustees. Section 326 provides a mathematical calculation of the trustee's commission based on amounts disbursed:

> (a)   In a case under chapter 7 or 11, the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed 3 percent of such moneys in excess of $1,000,000, upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims.

11 U.S.C. § 326(a).

Section 330 establishes the authority to compensate trustees. Before enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"),

---

[2] Unless stated otherwise, all statutory references are to 11 U.S.C.

Section 330(a) provided in part:

> (a)(1) After notice … and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee …
>     (A)  reasonable compensation for actual, necessary services rendered by the trustee …; and
>     (B)  reimbursement for actual, necessary expenses.
>
> (2) The court may, on its own motion or on the motion of the United States Trustee, the United States Trustee for the District or Region, the trustee for the estate, or any other party in interest, award compensation that is less than the amount of compensation that is requested.
>
> (3) In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including--
>     (A)  the time spent on such services;
>     (B)  the rates charged for such services;
>     (C)  whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>     (D)  whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>     (E)  with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>     (F)  whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.
>
> . . . .

11 U.S.C. § 330(a).

Thus, before BAPCPA both Chapter 7 and Chapter 11 trustees were entitled to "reasonable compensation" for their services, as determined by § 330(a)(3), up to the statutory cap. *See In re Miniscribe Corp.,* 309 F.3d 1234, 1241 (10th Cir. 2002) ("[A] court awarding trustee fees must begin by assessing reasonableness under § 330(a) before applying the percentage-based cap under § 326(a)"); *In re Clemens,* 349 B.R. 725, 730 (Bankr. D. Utah 2006) (pre–BAPCPA, courts inquired into the reasonableness of all trustee fees before applying the

statutory cap). *See generally* 3 Collier on Bankruptcy, ¶ 326.02.[1][a] (16th ed. 2010) (pre-BAPCPA, trustee fees must be reasonable and under the statutory cap).

Section 330 was amended in 2005. First, BAPCPA added the italicized language to § 330(a)(3):

> (3) In determining the amount of reasonable compensation to be awarded *to an examiner, trustee under chapter 11, or professional person*, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including--

The added language meant that Chapter 7 trustees were no longer governed by the section.[3] *See In re Rowe,* 750 F.3d 392, 396 (4th Cir. 2014) (the current version of § 330(a)(3) deals only with Chapter 11 trustee compensation). BAPCPA also added § 330(a)(7):

> [i]n determining the amount of reasonable compensation to be awarded a trustee, the court shall treat such compensation as a commission, based on section 326.

After BAPCPA, courts disagree as to whether they can inquire into the reasonableness of a Chapter 7 trustee's compensation. *Compare In re Clemens,* 349 B.R. 725, 731 (Bankr. D. Utah 2006) (even post-BAPCPA, Chapter 7 trustees are limited to reasonable compensation), with *In re Rowe,* 750 F.3d 392, 397 (4th Cir. 2014) (absent extraordinary circumstances, a Chapter 7 trustee's compensation is based solely on the § 326 commission rate).

With Chapter 11 trustees, however, courts have generally held that, notwithstanding § 330(a)(7), such trustees are still entitled to "reasonable compensation" up to § 326(a)'s cap. *See, e.g., In re Salgado-Nava,* 473 B.R. 911, 919 (9th Cir. BAP 2012) ("Notwithstanding the applicability of paragraph (7) to chapter 11 trustees, they are still specifically included in paragraph (3) with its litany of reasonableness factors"); *In re Coyote Ranch Contractors, LLC,* 400 B.R. 84, 94 (Bankr. N.D. Tex. 2009) (§ 330(a)(7) requires compensation awarded to Chapter

---

[3] The Court makes no determination about whether it can inquire into the reasonableness of a Chapter 7 trustee's compensation under § 330(a)(1).

11 trustee to be in the form of a commission, even though the court must consider factors set forth in § 330(a)(3)); *In re Clemens,* 349 B.R. 725, 733 (Bankr. D. Utah 2006) (after BAPCPA, § 330(a)(3) requires courts to rule on the reasonableness of requested Chapter 11 trustee fees). The Court agrees that post-BAPCPA, Chapter 11 trustees are limited to "reasonable compensation" up to the statutory cap. The Court need not determine how § 330(a)(7) affects compensation to Chapter 7 trustees.

      B.    <u>Interim Compensation</u>. Section 331 authorizes interim compensation to professionals, including trustees:

> A trustee … or any professional person employed under section 327 or 1103 of this title may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under section 330 of this title. After notice and a hearing, the court may allow and disburse to such applicant such compensation or reimbursement.

§ 331. Section 331 was added to the Bankruptcy Code "to remove any doubt that officers of the estate may apply for, and the court may approve, compensation and reimbursement during the case, instead of being required to wait until the end of the case, which in some instances, may be years." H.R.Rep. No. 595, 95th Cong., 1st Sess. 330 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 41–42 (1978) U.S. Code Cong. & Admin. News pp. 5787, 5827, 5828, 6287.

      An award of interim compensation remains subject to final Court approval. 3 Collier on Bankruptcy, ¶ 331.04[1] (15th ed. 1996) (interim allowances are subject to reexamination because all administrative expenses "must receive the court's final scrutiny and approval"); *Matter of Taxman Clothing Co.*, 49 F.3d 310, 314 (7th Cir. 1995) ("All awards of interim compensation are tentative, hence reviewable—and revisable—at the end of the case"). Any interim compensation awarded pursuant to § 331 that exceeds the amount of compensation

ultimately awarded under § 330 must be disgorged. 11 U.S.C. § 330(a)(5).

Courts have wide discretion in authorizing the payment of interim compensation to trustees and other professionals. *See In re Paterno,* 2014 WL 4929106, *2 (Bankr. M.D. N.C. 2014) ("Section 331 provides that the payment of interim compensation to professionals is in the discretion of the Court").[4] The decision typically is made on a case-by-case basis after considering the totality of the circumstances. *See, e.g., In re Heatherly,* 179 B.R. 872, 875 (Bankr. W.D. Tenn. 1995) ("[T]he totality of circumstances in a given case will determine whether a court should exercise its discretion in allowing interim compensation where a disbursement by the trustee has not occurred"); *Commercial Financial Services, Inc.,* 231 B.R. at 354 (determination regarding interim trustee compensation "must be made on a case-by-case basis").

Given the discretionary standard, guidance about when to award interim compensation to trustees is fairly sparse. Factors to consider, based on a review of the case law and on the Court's judgment, include:

1. How much work must the trustee do to effectively administer the estate?

2. Is there enough equity or cash flow in the estate to prevent administrative insolvency?

3. Would deferring compensation work a hardship on the trustee?

4. Does the estate generate monthly income from an ongoing business, or is it a liquidating estate?

---

[4] *See also In re Specker Motor Sales Co.*, 289 B.R. 870, 872 (Bankr. W.D. Mich. 2003) (Allowance of interim compensation "is always discretionary…. [I]nterim allowances are interlocutory in nature and are always subject to the court's re-examination and adjustment during the course of a case"); *In re Commercial Financial Services, Inc.,* 231 B.R. 351, 354 (Bankr. N.D. Okla. 1999) ("[D]efining the circumstances under which deviation from the 120-day period is appropriate lies solely within the discretion of the Court before whom the case is pending").

5. Are there adequate safeguards in the event disgorgement is necessary?

*See, e.g., In re Knudsen Corp.,* 84 B.R. 668, 672 (9th Cir. BAP 1988) (setting forth factors to consider when awarding interim compensation to professionals); *In re Stewart,* 157 B.R. 893, 897-898 (9th Cir. BAP 1993) (discussing interim compensation to trustees); *In re Paterno,* 2014 WL 4929106, *2 (Bankr. M.D. N.C. 2014) (same); *In re Heatherly,* 179 B.R. 872, 875 (Bankr. W.D. Tenn. 1995) (same).

C. <u>Weighing the Factors</u>. The Court weighs the factors as follows:

| Factor | Discussion |
|---|---|
| | |
| Amount of trustee work? | Substantial. The Trustee is preparing the Property for sale in the next few months, and the Property needs substantial repairs. He frequently drives about 320 miles from Albuquerque to Hobbs to oversee operations. The Debtor's books and records are in disarray, and its principals have been uncooperative in providing information. The Trustee brought an adversary proceeding against Regal Manor and Rita Pilate to recover estate funds. |
| Will the estate be administratively solvent? | Probably. There appears to be an equity cushion in the Property and steady monthly cash flow, both of which reduce the risk of administrative insolvency. |
| Would lack of interim payments work a hardship on the Trustee? | Yes, to some extent. To effectively prepare the Property for sale, the Trustee must devote a large part of his time to administering the estate, reducing his income from other sources. On the other hand, he receives some compensation by virtue of his employment as an accountant. |
| Ongoing business or liquidation? | The Property is an ongoing business, which weighs in favor of authorizing interim compensation. When a trustee operates an ongoing business, his role is akin to a manager, who typically receives a salary. In a liquidating estate, however, trustees ordinarily receive compensation when they sell property and distribute funds. |
| Adequate safeguards if disgorgement is required? | Yes. The interim compensation application includes a 25% hold back, which reduces the risk of disgorgement. Furthermore, the Trustee has an established accounting practice, so he should be able to repay any fees that later had to be returned for any reason. |

The factors weigh in favor of authorizing interim compensation. After considering §§ 326 and 330, the creditors' interests, and the fact that the Trustee is also employed as an accountant, the Court concludes it is reasonable to allow the Trustee to be paid interim compensation of 75% of the trustee fees earned from the prior month's disbursements, capped at the amounts set forth in Budget A or B—whichever is applicable—attached to the cash collateral order entered October 1, 2015. The Court will also authorize reimbursement of expenses to the extent set forth in that order.

### III. CONCLUSION

The Court will allow the estate to pay the Trustee monthly interim compensation payments as outlined above. A separate order will be entered.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: October 2, 2015

Copies to:

Michelle K. Ostrye
320 Gold Ave. SW, Suite 300A
Albuquerque, NM 87102

Mary Johnson
201 Third Street NW, Ste. 505
Albuquerque, NM 87102

Alice N. Page
P.O. Box 608
Albuquerque, NM 87103-0608